Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| ADA IRIS TORRES SABATER  Apelante  v.  JULITA COLÓN BÁEZ  Apelada | TA2026AP00409 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce  Caso número: PO2021CV02172  Sobre: Nulidad de Testamento y Liquidación de Comunidad de Bienes Hereditarios y Partición de Herencia |
|---|---|---|

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

# SENTENCIA

En San Juan, Puerto Rico, a 29 de mayo de 2026.

Comparece la apelante, Ada Iris Torres Sabater, mediante el recurso de epígrafe y nos solicita que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce, el 4 de marzo de 2026, la cual fue notificada el día 9 del mismo mes y año. Mediante el referido dictamen, el foro primario ordenó el archivo sin perjuicio del caso de epígrafe, al amparo de la Regla 39.2(a) de Procedimiento Civil, 32 LPRA Ap. V, R. 39.2(a).

Por los fundamentos que se exponen a continuación, se revoca la *Sentencia* apelada. En consecuencia, se devuelve el caso ante la consideración del foro primario y se ordena la continuación de los procedimientos, de forma cónsona con los pronunciamientos consignados en esta *Sentencia*.

I

El 15 de septiembre de 2021, Ada Iris Torres Sabater (Torres Sabater o apelante) presentó una *Demanda* sobre nulidad de

testamento y liquidación de comunidad de bienes hereditarios y partición de herencia, en contra de Julita Colón Báez (Colón Báez o apelada).[1] En síntesis, alegó ser la heredera universal del grado más próximo de su esposo, Alfredo Colón Báez, quien falleció el 19 de mayo de 2019. Torres Sabater adujo que, si bien el causante otorgó un testamento abierto en el 2008 en el que declaró a la apelada, quien es su hermana, como su única y universal heredera, su matrimonio fue en el 2018, con posterioridad al testamento. Como remedio, y de conformidad con el entonces vigente Artículo 909 del Código Civil de 1930, 31 LPRA sec. 2677,[2] solicitó que el foro *a quo* declarase nulo el testamento abierto otorgado por el causante.

El 16 de septiembre de 2021, la Secretaría expidió el emplazamiento correspondiente, el cual fue diligenciado posteriormente. Así las cosas, el 14 de febrero de 2022, Colón Báez contestó la demanda.[3]

Luego de múltiples incidencias procesales, y en lo pertinente al recurso ante nos, el 19 de febrero de 2026, el foro primario emitió una *Orden*, que notificó al día siguiente, tanto a los abogados de las partes como a la propia Torres Sabater.[4] Mediante esta, le concedió a Torres Sabater un término de cinco (5) días para mostrar causa por la cual no se debiera desestimar la *Demanda*, de conformidad con la Regla 39.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 39.2. Asimismo, le impuso una sanción de $25.00, pagadera en el mismo término.

En la citada orden de mostrar causa, el foro *a quo* también le apercibió a la apelante que su incumplimiento con esta podría

---

[1] Entrada núm. 1 del caso núm. PO2021CV02172 del Sistema Unificado de Manejo y Administración de Casos (SUMAC).

[2] La referida disposición establecía lo siguiente: "A falta de descendientes y ascendientes, sucederá en todos los bienes del difunto el cónyuge sobreviviente. En su defecto, le sucederán sus hermanos y sobrinos, hijos de éstos, sean o no de doble vínculo de la manera establecida en las tres (3) Secciones que preceden".

[3] Entrada núm. 14 del caso núm. PO2021CV02172 del SUMAC.

[4] Entrada núm. 107 del caso núm. PO2021CV02172 del SUMAC.

conllevar la imposición de sanciones adicionales e incluso la desestimación del caso. Cabe destacar que, en dicha *Orden*, el foro primario también hizo constar que la vista de conferencia inicial estuvo pautada originalmente para el 25 de agosto de 2025, pero que fue necesario convertirla en una vista sobre el estado de los procedimientos, debido a que las partes incumplieron con la radicación del informe de inventario y la mensualidad de los bienes del caudal relicto.[5]

Asimismo, surge del recuento consignado en la orden de mostrar causa que, el 25 de agosto de 2025, la representación legal de Torres Sabater informó haberle cursado una oferta a Colón Báez para finiquitar el pleito. Asimismo, que le solicitó a la apelada el envío de la lista de los bienes para completar el inventario, pero que no recibió respuesta. Así también, el 25 de agosto de 2025, el foro *a quo* recalendarizó la vista de conferencia inicial para el 18 de diciembre de 2025.

Sin embargo, surge también de la orden de mostrar causa que, llegado el 18 de diciembre de 2025, la apelada volvió a solicitar transferencia de vista,[6] tras informar que los abogados de ambas partes intentaron reunirse en varias ocasiones, sin éxito. En consideración a lo anterior, el foro primario declaró Ha Lugar la solicitud y volvió a transferir la vista, en esta ocasión, para el 19 de febrero de 2026, mediante el mecanismo de videoconferencia.

Así las cosas, según se detalla también en la orden de mostrar causa del 19 de febrero de 2026, ese día el foro primario llamó el caso para la vista de conferencia inicial que estaba pautada. Sin embargo, detalla el foro *a quo* que, una vez llamado el caso, surgió que la representación legal de Colón Báez se conectó a la vista, pero que posteriormente se desconectó, mientras el foro primario atendía

---

[5] Entradas núm. 103 y 107 del caso núm. PO2021CV02172 del SUMAC.
[6] Entrada núm. 104 del caso núm. PO2021CV02172 del SUMAC.

otro asunto en agenda. Asimismo, se reseñó en la orden de mostrar causa que, al volver a llamar el caso con posterioridad, ninguna de las partes se encontraba conectada en la videoconferencia.

Así, previo al señalamiento pautado, el 19 de febrero de 2026, la apelada había presentado una *Moción sobre transferencia de vista.*[7] En esta, la representante legal de Colón Báez expresó que, si bien el caso estaba señalado para vista de conferencia inicial, los abogados de ambas partes todavía no habían radicado el informe de inventario que se les solicitó, debido a que no habían coincidido. Asimismo, expresó haber entendido que la vista citada para el 19 de febrero de 2026 era una de seguimiento, y no de conferencia inicial. Esta incidencia también fue consignada por el foro primario en la orden de mostrar causa del 19 de febrero de 2026.

Así las cosas, el 4 de marzo de 2026, el foro primario emitió la *Sentencia* apelada, la cual fue notificada el día 9 del mismo mes y año.[8] En esta, manifestó que la apelante no satisfizo lo ordenado en la orden de mostrar causa del 19 de febrero de 2026. Ello, debido a que ya habían transcurrido los cinco (5) días concedidos, sin que compareciera a mostrar causa por la cual no se debiera desestimar la *Demanda* de epígrafe. En consecuencia, ordenó el archivo del caso sin perjuicio, conforme a la Regla 39.2(a) de Procedimiento Civil, 32 LPRA Ap. V, R. 39.2(a). Así también, el 9 de marzo de 2026, el foro primario emitió y notificó una orden, mediante la cual dejó sin efecto la sanción de $25.00 impuesta en la orden de mostrar causa del 19 de febrero de 2026.[9]

En desacuerdo, el 20 de marzo de 2026, Torres Sabater presentó una *Solicitud de reconsideración.*[10] Evaluada esta, ese

---

[7] Entrada núm. 106 del caso núm. PO2021CV02172 del SUMAC.
[8] Entrada núm. 111 del caso núm. PO2021CV02172 del SUMAC.
[9] Entrada núm. 110 del caso núm. PO2021CV02172 del SUMAC.
[10] Entrada núm. 112 del caso núm. PO2021CV02172 del SUMAC.

mismo día el foro *a quo* la declaró No Ha Lugar, mediante una *Resolución Interlocutoria* notificada el día 24 del mismo mes y año.[11]

Todavía inconforme, el 22 de abril de 2026, Torres Sabater acudió ante este Foro mediante el recurso de epígrafe y adujo que el foro *a quo* cometió los siguientes errores:

> Erró el Honorable Tribunal de Primera Instancia al desestimar la causa de acción al amparo de la Regla 39.2 sin una ponderación adecuada del tracto procesal real del caso, sin considerar sanciones menos drásticas y en violación al debido proceso de ley.

> Erró el Honorable Tribunal de Primera Instancia al ignorar que, en las circunstancias particulares de este caso, la desestimación sin perjuicio produce un menoscabo sustantivo y desproporcionado sobre los derechos de la demandante relacionados con la liquidación del caudal hereditario y la cuota viudal usufructuaria.

Tras una evaluación preliminar del recurso de epígrafe, el 24 de abril de 2026, emitimos y notificamos una *Resolución.* En esta, dispusimos que la parte apelada contaba con un término de treinta (30) días para presentar su alegato, de conformidad con la Regla 22 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 22.

Así las cosas, transcurrido el término reglamentario para que la apelada presentara su alegato, esta no compareció. En consecuencia, procedemos a disponer del recurso de epígrafe, sin el beneficio de su comparecencia escrita.

## II

La desestimación es un pronunciamiento judicial que resuelve el pleito de forma desfavorable para el demandante, sin celebrar un juicio en su fondo y sin adjudicarlo en los méritos. *SLG Sierra v. Rodríguez,* 163 DPR 738, 745 (2005). Así, el poder discrecional de desestimar una demanda se debe ejercer juiciosa y apropiadamente y solo en casos en que no haya duda de la irresponsabilidad y contumacia de la parte contra quien se toman las medidas

---

[11] Entrada núm. 113 del caso núm. PO2021CV02172 del SUMAC.

drásticas. *Acevedo* v. *Compañía Telefónica de PR*, 102 DPR 787, 791 (1974). Ello pues, en nuestro ordenamiento jurídico se favorece el que los casos se ventilen en sus méritos. *Mun. de Arecibo v. Almac. Yakima*, 154 DPR 217, 221 (2001); *Rivera et al v. Superior Pkg., Inc. et al.*, 132 DPR 115, 124 (1992).

Así, el mecanismo de desestimación cuando la parte demandante incumple con las órdenes del tribunal se encuentra codificado en la Regla 39.2(a) de Procedimiento Civil, 32 LPRA Ap. V, R. 39.2(a). Esta dispone lo siguiente:

> (a) Si la parte demandante deja de cumplir con estas reglas o con cualquier orden del tribunal, el tribunal a iniciativa propia o a solicitud de la parte demandada podrá decretar la desestimación del pleito o de cualquier reclamación contra [e]sta o la eliminación de las alegaciones, según corresponda.
>
> Cuando se trate de un primer incumplimiento, la severa sanción de la desestimación de la demanda o la eliminación de las alegaciones tan s[o]lo procederá después que el tribunal, en primer término, haya apercibido al abogado o abogada de la parte de la situación y se le haya concedido la oportunidad para responder. Si el abogado o abogada de la parte no responde a tal apercibimiento, el tribunal procederá a imponer sanciones al abogado o abogada de la parte y se notificará directamente a la parte sobre la situación. Luego de que la parte haya sido debidamente informada o apercibida de la situación y de las consecuencias que pueda tener el que la misma no sea corregida, el tribunal podrá ordenar la desestimación del pleito o la eliminación de las alegaciones. El tribunal concederá a la parte un término de tiempo razonable para corregir la situación que en ningún caso será menor de treinta (30) días, a menos que las circunstancias del caso justifiquen que se reduzca el término.
>
> [...].

Véase, además, *Mun. de Arecibo v. Almac. Yakima*, supra, págs. 222-223; *Maldonado v. Srio. de Rec. Naturales*, 113 DPR 494, 498 (1982).

Es decir, en aras de garantizar el debido proceso de ley, el tribunal está obligado a seguir un procedimiento claramente prestablecido, antes de ordenar la desestimación de la demanda o la eliminación de las alegaciones. En otras palabras, la parte demandante tiene que ser notificada por el tribunal de la situación de incumplimiento, junto a sus consecuencias. Además, debe brindarle la oportunidad de tomar las medidas necesarias para

corregirla. De lo contrario, se violaría el debido proceso de ley. Este razonamiento encuentra apoyo en las siguientes expresiones de nuestro Tribunal Supremo:

> [...] Desestimar de inmediato una demanda, o una contestación, como medio de aplicar sanción al proceder o a una actitud del abogado [o abogada] en el curso del pleito, tiene el efecto de privar a un ciudadano [o ciudadana] de la función judicial de adjudicación que forma parte de nuestra estructura constitucional, privándole de la oportunidad de un día en corte para hacer valer en los méritos la legitimidad de su derecho a reclamar si es [parte] demandante, o la legitimidad y mérito de una defensa, si es [parte] demandada]. Este es un valor en el orden social demasiado apreciable para ser prontamente sacrificado, aun cuando la sanción se dé en aras del pronto despacho de los asuntos radicados y de una rápida administración de justicia. Si los pleitos judiciales se desestimaren por esta vía indistintamente, se habrán despachado los asuntos, no hay duda, pero tal vez no habría quedado mucho de justicia a impartir.

*Ramírez de Arellano v. Srio. de Hacienda*, 85 DPR 823, 829 (1962).

Debido a lo anterior, la determinación de desestimar una demanda o eliminar las alegaciones de una parte debe tomarse juiciosa y apropiadamente. *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 298 (2012); *Maldonado v. Srio. de Rec. Naturales*, supra. En ese sentido, se debe considerar lo siguiente:

> [L]a desestimación de un caso como sanción, debe prevalecer únicamente en situaciones extremas en las cuales haya quedado demostrado de manera clara e inequívoca la desatención y el abandono total de la parte con interés y "después que otras sanciones hayan probado ser ineficaces en el orden de administrar justicia y, en todo caso, no debería procederse a ella sin un previo apercibimiento".

*Mun. de Arecibo v. Almac. Yakima*, supra, pág. 222, citando a *Ramírez de Arellano v. Srio. de Hacienda*, supra, págs. 829-830. (Énfasis omitido).

El requisito de realizar un previo apercibimiento a la parte antes de proceder con la desestimación es un elemento del debido proceso que nuestro ordenamiento jurídico ha reconocido para estas circunstancias. Según las expresiones de nuestro más Alto Foro:

> [...] La experiencia señala que en la gran mayoría de los casos [...] las partes no están enteradas de la actuación negligente de sus abogados [o abogadas] y, al advenir en conocimiento de ello, la situación es corregida de inmediato. Una parte que haya sido informada y apercibida de esta clase de situación y no tome acción correctiva, nunca se podrá querellar, ante ningún foro, de que se le despojó injustificadamente de su causa de acción y/o defensas.

*Maldonado v. Srio. de Rec. Naturales*, supra, pág. 498.

Asimismo, "[e]l fundamento para no imponer sanciones drásticas al cliente es que de 'ordinario la parte que ejercita su derecho en corte no está informada de los trámites rutinarios'". *Dávila v. Hosp. San Miguel, Inc.,* 117 DPR 807, 814 (1986), citando a *Ramírez de Arellano v. Srio. de Hacienda*, supra, pág. 830. No podemos perder de perspectiva que "el uso desmesurado de[l] mecanismo procesal [de la desestimación] puede vulnerar el propósito que persiguen los tribunales, que es impartir justicia". *Sánchez Rodríguez v. Adm. de Corrección*, 177 DPR 714, 721 (2009).

A la luz de la normativa antes expuesta, procedemos a disponer del caso ante nuestra consideración.

**III**

A continuación, procedemos a la discusión conjunta de los dos señalamientos de error formulados por la apelante, debido a que se encuentran estrechamente relacionados. Mediante estos, Torres Sabater adujo que el foro primario erró al desestimar la causa de acción, al amparo de la Regla 39.2(a) de Procedimiento Civil, *supra*. Ello, sin una ponderación adecuada del tracto procesal real del caso, sin considerar sanciones menos drásticas y en violación al debido proceso de ley. Asimismo, argumentó que la actuación del foro *a quo* fue desacertada, en la medida que ignoró que, en las circunstancias particulares de este caso, la desestimación sin perjuicio produjo un menoscabo sustantivo y desproporcionado sobre sus derechos. Como veremos a continuación, tiene razón la apelante.

En primer lugar, llama a nuestra atención que las partes sin duda han demostrado dejadez e incumplimientos reiterados en el trámite del caso de epígrafe. Por un lado, no está sujeto a controversia que, en este caso, la radicación de la *Demanda* se remonta al 15 de septiembre de 2021. Asimismo, resalta que, desde la vista del 25 de agosto de 2025, el foro *a quo* realizó otros dos

intentos infructuosos por llevar a cabo la vista de conferencia inicial.[12] En todas estas ocasiones, el denominador común que ha impedido la realización de la vista de conferencia inicial lo ha sido el incumplimiento de las partes con presentarle al tribunal el informe de inventario ordenado con anterioridad, sin ofrecer razones de peso que así lo justifiquen. Asimismo, resalta que la apelante ignoró, tanto la orden de mostrar causa del 19 de febrero de 2026, como el pago de la sanción de $25.00 que originalmente le fue impuesta.

Sin embargo, y a pesar de lo antes reseñado, lo cierto es que el foro primario emitió la *Sentencia* apelada y desestimó la *Demanda* de epígrafe, sin cumplir a cabalidad con los requerimientos de la Regla 39.2(a) de Procedimiento Civil, *supra.* En particular, el foro *a quo* omitió cumplir puntillosamente con las exigencias del segundo párrafo del inciso (a) de la citada regla.[13]

Por ejemplo, el mencionado texto requiere que, cuando se trate de incumplimientos específicos, el tribunal conceda a la parte un término de tiempo razonable para corregir la situación, el cual en ningún caso deberá ser menor de treinta (30) días. Ello, a menos que las circunstancias del caso justifiquen su reducción. La regla también exige comenzar con sanciones menos severas, lo cual puede incluir la imposición de sanciones a los abogados, antes de un aumento gradual en la severidad de las medidas, las cuales entonces podrían culminar en la desestimación.

---

[12] Según indicáramos en la parte I de nuestra exposición, luego del 25 de agosto de 2025, el foro primario calendarizó la vista de conferencia inicial en otras dos ocasiones: el 18 de diciembre de 2025 y el 19 de febrero de 2026.

[13] "[…] Cuando se trate de un primer incumplimiento, la severa sanción de la desestimación de la demanda o la eliminación de las alegaciones tan s[o]lo procederá después que el tribunal, en primer término, haya apercibido al abogado o abogada de la parte de la situación y se le haya concedido la oportunidad para responder. Si el abogado o abogada de la parte no responde a tal apercibimiento, el tribunal procederá a imponer sanciones al abogado o abogada de la parte y se notificará directamente a la parte sobre la situación. Luego de que la parte haya sido debidamente informada o apercibida de la situación y de las consecuencias que pueda tener el que la misma no sea corregida, el tribunal podrá ordenar la desestimación del pleito o la eliminación de las alegaciones. El tribunal concederá a la parte un término de tiempo razonable para corregir la situación que en ningún caso será menor de treinta (30) días, a menos que las circunstancias del caso justifiquen que se reduzca el término".

En fin, en consideración a que el foro primario no cumplió a cabalidad con los requisitos que la Regla 39.2(a) de Procedimiento Civil, *supra*, exige como preámbulo a desestimar un pleito como sanción ante incumplimientos reiterados, corresponde revocar la *Sentencia* apelada. En consecuencia, procede devolver el caso ante la consideración del foro *a quo*, para la continuación de los procedimientos.

**IV**

Por los fundamentos que anteceden, se revoca la *Sentencia* apelada. En consecuencia, se devuelve el caso ante la consideración del foro primario y se ordena la continuación de los procedimientos, de forma cónsona con los pronunciamientos consignados en esta *Sentencia.*

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones